UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-60746-RAR

**JOSEPH SIMONE**,

    Plaintiff,

v.

**SECRETARY OF HOMELAND SECURITY**,
*Alejandro Mayorkas, United States*
*Department of Homeland Security,*

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Amended Complaint, [ECF No. 11]. Having considered Defendant's Motion, Plaintiff's Response [ECF No. 17], Defendant's Reply [ECF No. 22], and the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion, [ECF No. 11], is **GRANTED** for the reasons stated herein.

## BACKGROUND

Plaintiff Joseph Simone brings this lawsuit against Defendant Alejandro Mayorkas, Secretary of Homeland Security, under the Rehabilitation Act of 1973, alleging disability discrimination. Simone alleges that he was wrongfully terminated from his employment with the Transportation Security Administration ("TSA") due to a heart condition and his requests to take occasional medical leave from work. For eight years, Simone served as a Transportation Security Officer ("TSO") with TSA at the Fort Lauderdale – Hollywood International Airport, where he screened airline passengers and their baggage at security checkpoints. Am. Compl. ¶ 9. When

TSA initially hired Simone, he disclosed that he was receiving treatment for a heart condition—mitral valve prolapse—which caused him occasional heart palpitations. *Id.* ¶¶ 19–20. A TSA physician determined that Simone was medically qualified for the TSO position and cleared him to be hired. *Id.* ¶ 20. Throughout his employment, Simone took leave under the Family and Medical Leave Act ("FMLA") when he required a day of rest due to an episode of heart palpitations. *Id.* ¶ 21. Simone maintains his condition did not affect his ability to perform essential functions of his job when he was present for work. *Id.* ¶ 19.

In 2014, TSA determined that Simone was no longer medically qualified to serve as a TSO due to his FMLA leave requests. On August 22, 2014, TSA proposed to remove Simone from federal service and placed him on paid administrative leave. *Id.* ¶ 27. Simone initiated a formal complaint of discrimination and retaliation under the Rehabilitation Act with TSA's Civil Rights Division on or about December 30, 2014. *Id.* ¶¶ 14, 28. Simone alleges that on or about February 19, 2015, TSA removed him from federal service due to his disability, requests for accommodation, and complaints of discrimination and retaliation. *Id.* ¶ 28. Simone subsequently amended his administrative complaint to further allege that his removal from federal service violated the Rehabilitation Act. The Equal Employment Opportunity Commission ("EEOC") denied Simone's complaint without a hearing, and on January 10, 2022, the EEOC issued a final order denying Plaintiff's appeal and request for reconsideration. *Id.* ¶ 16.

Plaintiff's Amended Complaint asserts four counts under the Rehabilitation Act, as amended, 29 U.S.C. § 391 *et seq.*, which prohibits disability discrimination in federally funded programs. Simone alleges discrimination based on a disability (Count I); failure to provide reasonable accommodation (Count II); retaliation for protected activities (Count III); and unlawful interference and coercion (Count IV).

Defendant's Motion to Dismiss raises two arguments. First, Defendant moves for dismissal of Simone's Amended Complaint on the grounds that Simone's requested relief under the Rehabilitation Act is wholly precluded by the Aviation and Transportation Security Act ("ATSA"). Mot. at 1. In response, Simone argues that the later-enacted Whistleblower Protection Enhancement Act ("WPEA") supersedes the ATSA and therefore provides a basis for his suit. Resp. at 5–6. In the alternative, Defendant argues that Simone fails to state a claim under which relief can be granted because he has failed to exhaust administrative remedies. Mot. at 11. Simone disagrees and argues that he properly exhausted all administrative remedies within the required time limits. Resp. at 16.

The Court finds that under binding Eleventh Circuit precedent, the ATSA precludes Simone's lawsuit, and therefore, the Amended Complaint must be dismissed with prejudice. Although Defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant's motion challenges whether Simone has stated a claim upon which relief can be granted. Mot. at 1, 10. Moreover, binding Eleventh Circuit precedent addresses the ATSA's preclusion of Rehabilitation Act claims as dismissals under Rule 12(b)(6), not as a question of subject-matter jurisdiction. Thus, the Court finds it appropriate to address Defendant's argument pursuant to Rule 12(b)(6). And because dismissal of the Amended Complaint is warranted for failure to state a claim, it is unnecessary to address Defendant's alternative exhaustion arguments.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the basis that it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## **ANALYSIS**

The question before the Court is whether the ATSA precludes Plaintiff's disability discrimination lawsuit brought under the Rehabilitation Act against the Secretary of Homeland Security. Eleventh Circuit precedent is unequivocal. A TSA employee or applicant "who alleges that TSA discriminated against him on the basis of disability" when making an employment decision "cannot state a claim against TSA based on violation of the Rehabilitation Act." *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1338 (11th Cir. 2006); *see also White v. Sec'y of Homeland Sec*, 478 F. App'x 587, 588 (11th Cir. 2012).[1] The Eleventh Circuit has concluded that the plain language of the ATSA allows—and in some circumstances, requires—TSA to make employment decisions that are contrary to the requirements of the Rehabilitation Act. Moreover, every circuit to address this issue agrees that the ATSA's language plainly precludes TSA security

---

[1] Defendant is the Secretary of Homeland Security, United States Department of Homeland Security, having been appointed on February 2, 2021. TSA is an agency of DHS. Am. Compl. ¶¶ 6, 9.

screeners from bringing suit under the Rehabilitation Act. *Field v. Napolitano*, 663 F.3d 505, 512 (1st Cir. 2011) (collecting cases). Thus, a case alleging TSA made employment decisions in violation of the Rehabilitation Act is properly dismissed for failure to state a claim upon which relief can be granted. *Castro*, 472 F.3d at 1338.

In *Castro*, TSA denied employment to an applicant for a security screener position because of his disability. *Id.* Castro's suit against DHS challenged "TSA's authority to promulgate and implement hiring standards inconsistent with the Rehabilitation Act." *Id.* The court affirmed the district court's dismissal of Castro's complaint for failure to state a claim upon which relief can be granted because a TSA security screener applicant "cannot state a claim against TSA based on violation of the Rehabilitation Act." *Id.*

In reaching its conclusion, the court began with context for the enactment of the ATSA, explaining that "[f]ollowing the terrorist attacks of September 11, 2001, Congress passed the ATSA to affect 'fundamental change in the way' the United States 'approaches the task of ensuring the safety and security of the civil air transportation system.'" *Castro*, 472 F.3d at 1336 (citing H.R. Conf. Rep. No. 107–296 at 53, U.S. Code Cong. & Admin. News 2002, pp. 589, 590). The ATSA sets out hiring qualifications for TSO employees like Simone, which includes physical requirements. It states, "the Under Secretary shall establish qualification standards for individuals to be hired by the United States as security screening personnel." 49 U.S.C. § 44935(e)(2)(A). The statute provides,

> Notwithstanding any provision of law, those standards shall require, at a minimum, an individual…
>
> (iii) to meet, at a minimum, the requirements set forth in subsection (f);
>
> (iv) to meet such other qualifications as the Under Secretary may establish; and

> (v) to have the ability to demonstrate daily a fitness for duty without any impairment due to illegal drugs, sleep deprivation, medication, or alcohol.

*Id.* Subsection (f), identified above, requires that screeners have a high school or equivalency diploma, or experience sufficient to perform screener duties; that screeners "possess basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, and motor skills"; and that screeners be able to read, speak, and write English. 49 U.S.C. § 44935(f). The statute also states: "*[n]otwithstanding any other provision of law*, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for ... individuals ... to carry out the screening functions." 49 U.S.C. § 44935 note (Public Law 107–71, Title I, § 111(d), 115 Stat. 620) (emphasis added).

The language "notwithstanding any other provision of law" is key. In *Castro*, the Eleventh Circuit interpreted this text, holding that "[t]he plain language of the ATSA indicates that TSA need not take the requirements of the Rehabilitation Act into account when formulating hiring standards for screeners." *Castro*, 472 F.3d at 1337. "It is well established that, when the statutory language is plain, we must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). The court in *Castro* explained that the phrase "notwithstanding any other provision of law" indicates that Congress intended for the ATSA "to take precedence over any preexisting or subsequently-enacted legislation on the same subject." *Castro*, 472 F.3d at 1337 (citation omitted). The court held that the "notwithstanding" language indicates "that TSA shall implement hiring standards and conditions of employment (including physical standards) for screening personnel, whether or not those standards and conditions of employment are consistent with the Rehabilitation Act." *Id.*

While the court found the plain language of the statute sufficient to reach their conclusion, the court also observed that other portions of the ATSA supported their decision. Notably, "subsection (f) of the ATSA explicitly requires TSA to promulgate hiring standards that are inconsistent with the Rehabilitation Act's prohibition against making hiring decisions based on physical disabilities." *Id.* The statute lists physical abilities that must be incorporated into TSA's hiring criteria for TSOs. The court concluded, "[t]he existence of subsection (f)'s requirements supports our conclusion that Congress intended to exempt TSA from the contrary requirements of the Rehabilitation Act with respect to the hiring of security screeners." *Id.* at 1337–38.

Simone argues in his Response that the Whistleblower Protection Enhancement Act ("WPEA"), which was enacted after the ATSA and after the *Castro* opinion, permits TSOs to file Rehabilitation Act claims. Plaintiff's argument relies on a single district court case, *Ruedas-Rojas v. McAleenan*, No. 19-22522, 2020 WL 6143652, at *1 (S.D. Fla. June 1, 2020). While Defendant correctly points out that this case is not binding on the Court, the Court briefly addresses it to explain why the WPEA does not alter the Court's decision.

In *Ruedas-Rojas*, the district court explained that like the ATSA, the WPEA also includes a "notwithstanding" clause. That provision states, "[n]otwithstanding any other provision of law, any individual holding or applying for a position within the [TSA] shall be covered by … the provisions of section 2302(b)(1), (8), and (9)." 5 U.S.C. § 2304. Section 2302(b)(1), identified in the statute, outlines certain "prohibited personnel practices" under the Civil Service Reform Act ("CSRA") that prohibit federal agencies from engaging in employment discrimination based on physical handicap. 5 U.S.C. § 2302(b)(1)(D). The district court concluded, since the "notwithstanding" language of the ATSA signals Congress's intention that the provision override conflicting provisions of law, a "plain reading of § 2304's subsequent 'notwithstanding' language indicates clear congressional intent to override such conflicting sections of the ATSA that deny

Page 7 of 10

security screeners relief under the Rehabilitation Act" as well. *Ruedas-Roja*, 2020 WL 6143652, at *4. Accordingly, the court reasoned, the "logical conclusion … is that TSA security screeners are in fact afforded protections under the Rehabilitation Act brought pursuant to the CSRA." *Id.*

This Court does not reach the same conclusion. Interpreting the ATSA's "notwithstanding" clause in *Castro*, the Eleventh Circuit expressly held that the clause indicates that Congress intended for the ATSA "to take precedence over any preexisting *or subsequently-enacted legislation* on the same subject." *Castro*, 472 F.3d at 1337 (emphasis added). That "notwithstanding" clauses apply to both preexisting and subsequently enacted laws is well settled in this circuit. *See, e.g.*, *United States v. McLymont*, 45 F.3d 400, 401 (11th Cir. 1995) ("Congress' use of the phrase 'notwithstanding any other provision of law' makes it clear that Congress intended the penalty provisions of § 924(c) to take precedence over any preexisting or subsequently enacted sentencing legislation, including the Sentencing Guidelines."). The fact that subsequently enacted legislation also includes a "notwithstanding" clause does nothing to change the analysis.

Later, in a post-WPEA case analyzing the intersection of the Rehabilitation Act and another statute—the Compensation Act—the Eleventh Circuit affirmatively relied on *Castro* to contrast the Compensation Act with the ATSA. *Center v. Sec'y, Dep't of Homeland Sec.*, 895 F.3d 1295, 1302 (11th Cir. 2018). The court concluded that unlike the ATSA, the Compensation Act does not conflict with the Rehabilitation Act. But the court stated, "to be sure, Congress may exempt agencies from compliance with the Rehabilitation Act when it creates workplace laws that explicitly conflict with and supersede the requirements of the Rehabilitation Act." *Id.* The court then explained its ruling in *Castro*, "underscore[ing]" the conclusion that the "notwithstanding" language indicates that the statute is "intended to take precedence over any preexisting or subsequently-enacted legislation on the same subject." *Id.* at 1303. The court also pointed out

Page **8** of **10**

that the ATSA "explicitly requires" TSA to enact hiring standards that are "inconsistent with the Rehabilitation Act's prohibition against making hiring decisions based on physical disabilities." *Id.*

Not only has the Eleventh Circuit continued to uphold *Castro* after the enactment of the WPEA, but other courts have as well. In this district, another court recently followed *Castro* in dismissing a TSO's Rehabilitation Act claims, holding that "[u]nder Eleventh Circuit precedent, the ATSA precludes TSA screeners from bringing an action under the Rehabilitation Act." *Mertil v. Mayorkas*, No. 21-20493, 2021 WL 4170775, at *2 (S.D. Fla. Sept. 14, 2021). Other circuits have done the same. *E.g.*, *Kaswatuka v. United States Dep't of Homeland Sec.*, 7 F.4th 327, 330 (5th Cir. 2021) (affirming district court's decision that the ATSA precludes a TSA employee from bringing a claim under the Rehabilitation Act). Even the court in *Ruedas-Rojas* acknowledged that post-WPEA enactment, courts around the country have held that the ATSA precludes disability discrimination cases brought by TSA employees or applicants. *Ruedas-Rojas*, 2020 WL 6143652, at *4 (collecting cases).

The Court is not inclined to depart from well-established and binding precedent in this circuit and all others that have addressed this issue. The ATSA's "notwithstanding" clause precludes Simone from bringing the instant suit under the Rehabilitation Act, and his claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Amended Complaint raising claims under the Rehabilitation Act is precluded by the ATSA. Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, [ECF No. 11], is **GRANTED**.

2. Plaintiff's Amended Complaint is **DISMISSED *with prejudice***.

3. The Clerk is instructed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 31st day of March, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**